**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Saad Moussa


    v.                              Civil No. 12-cv-015-JL


Warden, New Hampshire State Prison


**O R D E R**


    Before the Court for ruling are three motions for summary
judgment (doc. nos. 31, 35, and 44) filed by respondent on
petitioner Saad Moussa's amended habeas petition (doc. no. 23)
("Petition").  Moussa filed the Petition pursuant to 28 U.S.C.
§ 2254, challenging his October 8, 2008, state court convictions
on witness tampering and stalking charges and the sentences
imposed thereon.  See State v. Moussa, No. 05-S-1991-1992 (N.H.
Super. Ct., Rockingham Cnty.) ("2008 Criminal Case").  Moussa
has responded to those motions (doc. nos. 37, 38, 45, and 47).


**Background**

    The background set forth below has been gleaned from the
record before, and decisions of, the state courts involved in
Moussa's trial, post-conviction litigation, and appeals.  See
Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) ("review

under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

## I.    Facts Related to the Underlying Convictions

On January 19, 2005, Moussa was arrested on a stalking charge for phoning his then-wife, Najwa Moussa ("Najwa"), in violation of a 2004 restraining order which prohibited him from contacting her.  Pet. 1, ECF No. 23, 1; Trial Tr. 11.  Moussa was detained at the Rockingham County House of Corrections ("RCHC") pending trial.  Trial Tr. 11.  On March 26, 2005, Moussa received a visit at the RCHC from a close family friend, Sleiman Aziz.  Id. at 43.  During that visit, and during a recorded phone conversation Moussa made to Aziz that evening, Moussa pressed Aziz to call Najwa, to try to convince her to drop the pending criminal charges and the divorce proceedings she had initiated against Moussa.  Id. at 33, 36.  Moussa was, at that time, subject to a court order prohibiting him from having any contact with Najwa.  Pet. 1, ECF No. 23, 1.

Later on March 26, 2005, Aziz called Najwa.  Trial Tr. 33. During that phone call, Aziz asked Najwa to drop the charges against Moussa.  Id.  After receiving the phone call from Aziz, Najwa contacted the police to report that Moussa had contacted her through Aziz.  Id. at 34.  Moussa was subsequently charged

with witness tampering for attempting to induce Najwa to drop the criminal charges against him, and stalking, for contacting Najwa, through Aziz, in violation of a court order.  See State v. Moussa, No. 2008-0898 (N.H. Nov. 8, 2011) ("Moussa II"), slip op. 1-2, ECF No. 25-1, 1-2.

## II.  2005 Criminal Case

On December 10, 2004, Najwa obtained a restraining order preventing Moussa from contacting her.  Trial Tr. 29-30.  On January 7, 2005, Moussa telephoned Najwa and left a message on her answering machine.  Id. at 32.  On January 19, 2005, Moussa was arrested for making that phone call and charged with felony stalking.  Id.  As Moussa was on probation at the time of the phone call, Moussa was also charged with violating his probation.  See State v. Moussa, No. 05-327 (Salem Dist. Ct.) (Jan. 26, 2005, Violation of Probation Report), ECF No. 23-2, 1; (June 8, 2005, Adult Order of Commitment), ECF No. 23-2, 4.

On June 8, 2005, the Salem District Court found the probation violation to be true, and sentenced Moussa to five months in jail, with credit for the time he had served since January 19, 2005.  See Moussa, No. 05-327 (June 8, 2005 Adult Order of Commitment), ECF No. 23-2, 4.  Moussa was not released in June 2005, however, as he was detained pretrial for the

3

pending felony stalking charge.  See generally State v. Moussa,
No. 05-S-900 (N.H. Super. Ct., Rockingham Cnty.) ("2005 Criminal
Case"); see also 2008 Criminal Case (State's Assented-To Mot.
Amend filed Jan. 28, 2009), ECF No. 31-3, 51.

Moussa was convicted of stalking in the 2005 Criminal Case,
and sentenced to 3½ - 7 years in prison.  See 2005 Criminal Case
(Order Dec. 19, 2005), ECF No. 23-2, 6.  While the appeal in
that case was pending, the state moved to vacate the prison
sentence and to remand the stalking charge for resentencing as a
misdemeanor.  See State v. Moussa, No. 2006-0044 (State's Mot.
to Vacate Sent. Filed July 7, 2008), ECF No. 27-2.  The New
Hampshire Supreme Court ("NHSC") granted that motion.  See State
v. Moussa, No. 2006-0044 (N.H. July 23, 2008) ("Moussa I").  On
October 6, 2008, the trial court imposed a 12-month sentence in
the 2005 Criminal Case, and credited toward that sentence time
Moussa spent in pretrial detention.  See 2005 Criminal Case
(Oct. 9, 2008 Order), ECF No. 31-3, 47.

III. 2008 Criminal Case

    A.   January 23, 2008, Pretrial Status Conference

    On January 23, 2008, at a status conference, Moussa,
dissatisfied with the services of the attorneys that had
represented him in his criminal cases, told the court he wished

to proceed pro se in the 2008 Criminal Case.  Jan. 23, 2008,
Status Conf. Tr. 12.  The trial court conducted a colloquy with
Moussa.  Id. at 12-23.  The court advised Moussa against
proceeding pro se and warned him of a number of specific dangers
of doing so.  Id. at 13-16, 19, 21-22.  When Moussa still
expressed the desire to proceed to trial pro se after the
colloquy and warnings, the court found that Moussa had
knowingly, intelligently, and voluntarily waived his right to
counsel, and invoked his right to represent himself.  See 2008
Criminal Case (Jan. 23, 2008, Order, at 2); ECF 38-4, 12.

### B.    September 26, 2008, Pretrial Status Conference

At a September 26, 2008, status conference in the 2008
Criminal Case, Moussa appeared pro se.  Sept. 26, 2008, Status
Conf. Tr. 1.  At the start of the hearing, the prosecutor
advised the court that Moussa's family had contacted an
attorney, Stephen Wight, about representing Moussa in the 2008
Criminal Case.  Id. at 3.  Wight was in the courtroom and
advised the court that he had been "retained very tangentially"
by Moussa's family, that he had only come to court that day to
talk with Moussa, and that he would not stay in the case if he
was not going to be helpful.  Id. at 3-4.  The court advised
Wight that Moussa had elected to proceed pro se.  Id. at 4.

Wight, in response, stated "Yeah.  Okay.  Leave it there for
now.  Okay.  That's fine.  I'll just back away."  Id.  Moussa
did not ask for Wight to represent him, did not indicate that he
wished to revoke his waiver of counsel, and did not state that
he had reconsidered his decision to represent himself.  Id. at
6-7.

In the status conference, Moussa informed the court that he
had health problems, but he did not seek relief relating to his
health.  Id. at 9.  The court advised Moussa during the status
conference that he could have Wight act as standby counsel, and
that Moussa could discuss that option with Wight, but no further
action was taken with regard to Wight representing Moussa in the
2008 Criminal Case.  Id. at 6.  Moussa participated in the
status conference pro se, and represented himself at trial
without standby counsel.  See Trial Tr. 1, 178.

    C.    October 6, 2008, Pretrial Status Conference

On the morning of jury selection in the 2008 Criminal Case,
October 6, 2008, Moussa asked the judge to recuse herself,
asserting that he and the judge did not like each other, and
that the judge would hold the remand of the sentence in the 2005
Criminal Case against him in the 2008 Criminal Case.  Oct. 6,
2008, Status Conf. Tr. 3-4.  Stating that she had no animus

against Moussa for any reason, the judge again declined to recuse herself.  Id. at 19.

    D.   <u>Trial and Sentencing</u>

    The evidence commenced in Moussa's trial on October 7, 2008.  Trial Tr. 15.  Moussa chose not to attend the morning session of the trial on that date because he disagreed with the judge's decision not to recuse herself in the case.  Id. at 19. During Moussa's absence, Najwa testified that, on March 26, 2005, she received a call from a family friend, Sleiman Aziz, who told Najwa that Moussa had asked Aziz to call Najwa to try to convince her to drop the charges against him and not to testify against him.  Id. at 33.  The prosecutor played a recording of a conversation in Arabic that had been recorded at the RCHC, and Najwa identified the voices on the recording as Aziz's and Moussa's.  Id. at 35.

    Later that day, Moussa returned to the courtroom to participate in the trial.  Id. at 56.  The state then called Nadia Ezzat, the translator hired by the state to translate and transcribe the March 26, 2005, phone call from Moussa to Aziz. Id. at 57, 60.  Ezzat testified to her qualifications as a translator and authenticated the transcript she had made of the

phone conversation.  <u>Id.</u> at 58-60.  The court admitted Ezzat's transcript in evidence.  <u>Id.</u> at 63.[1]

When Moussa began to cross-examine Ezzat, he attempted to use a translation that one of his former attorneys had obtained, and that he had used to prepare for trial.  <u>Id.</u> at 67-69.  The court did not let Moussa ask Ezzat questions based on Moussa's transcript, stating that Ezzat had no personal knowledge of the transcript.  <u>Id.</u> at 69.

Moussa objected to having to use Ezzat's transcript for cross-examination as he had not seen it before.  <u>Id.</u> at 68, 70. The state later noted that it had sent a copy of the transcript to Moussa's former attorney, Evan Nappen.  <u>Id.</u> at 189.  Moussa had moved pretrial for discovery and, at that time, had advised the court and the state that he had been unable to obtain discovery from Nappen.  <u>Id.</u> at 188.  The court had denied Moussa's pretrial discovery request.  <u>Id.</u> at 189; 2008 Criminal Case (Order Apr. 17, 2008), ECF No. 31-3, 28.

At trial, Moussa told the court that he was unable to cross-examine Ezzat with the transcript as he had not had it before trial.  Trial Tr. at 69-70, 190.  The court told Moussa

---

[1]The transcript prepared by Ezzat may be found in the record in the Appendix to Defendant's Brief filed in Moussa's direct appeal.  <u>See</u> App. Def.'s Br., ECF No. 31-3, 7.

that he would have to use Ezzat's transcript during cross-examination, telling Moussa: "[Y]ou need to use [Ezzat's] transcript, and if you can't, we'll have to move on." Id. at 69. Moussa did not ask further questions of Ezzat or cross-examine her about her translation. Id. at 70.

The state then called Aziz to testify. Id. at 71. Aziz testified that Moussa "didn't ask me to do nothing." Id. at 83. Aziz admitted to telling Najwa she should drop the charges and the divorce proceedings, but stated that he did so of his own volition. Id. at 98. Aziz admitted that he had given a written statement to the police stating that Moussa had, during Aziz's March 26, 2005, visit to the RCHC, asked Aziz to call Najwa. Id. at 84, 107. The police statement was admitted in evidence as a full exhibit. Id. at 135.[2] Moussa, on cross-examination, attempted to place in evidence a previous statement Aziz had made to an investigator working for one of Moussa's previous attorneys. Id. at 103-05.[3] The court did not allow the

---

[2]Aziz's written statement to the Salem Police Department may be found in the record as an attachment to Moussa's objection to respondent's motion to exceed page limit. See Pet'r's Mot., ECF No. 38-4.

[3]The Aziz affidavits that Moussa tried to have admitted at trial may be found in the record in the appendix to Moussa's brief filed in his direct appeal. See App. Def's Br., ECF No. 31-3, 29-32.

statement to be admitted as a full exhibit, as it had not been provided to the state in reciprocal discovery.  Id. at 104-05.

During the charging conference at Moussa's trial, Moussa objected to the introduction of the Ezzat translation in evidence because he had not received it in pretrial discovery. Id. at 190-91.  The court compared the Ezzat transcript with the transcript Moussa had sought to use in cross-examining Ezzat, found that they were similar but did contain differences, and allowed both transcripts to be admitted in evidence.  Id. at 191-92.

On October 8, 2008, after closing arguments and jury instructions, the jury found Moussa guilty of both charges.  Id. at 228.  On November 14, 2008, the court sentenced Moussa to serve 3-6 years in prison for witness tampering, and to concurrently serve 12 months in jail on the stalking charge. 2008 Criminal Case (Order Nov. 14, 2008), ECF No. 38-4, 5. Moussa was ultimately granted 880 days of credit toward that sentence for time he had served prior to trial.  2008 Criminal Case (Order Feb. 11, 2009), ECF No. 31-3, 51-52, 54.  The award of pretrial credit represented the time Moussa had spent incarcerated since June 19, 2006, the date on which Moussa finished serving all of the jail time imposed for the probation

violation (five months) and for the 2005 Criminal Case (twelve months).  See id.; see also Moussa, No. 2008-0806, at 1-2.

IV.  Post-Conviction Litigation

A.  Direct Appeal

Moussa, through court-appointed counsel, appealed his convictions in the 2008 Criminal Case to the NHSC.  On November 8, 2011, the NHSC affirmed Moussa's convictions in the 2008 Criminal Case.  See Moussa II, at 1.

B.  State Petition for a Writ of Habeas Corpus

On August 7, 2012, Moussa filed a petition for a writ of habeas corpus in the New Hampshire Superior Court, sitting at Merrimack County ("MCSC"), asserting eleven claims for relief alleging substantive violations of his federal constitutional rights.  Moussa also asserted a twelfth claim, alleging that his appellate counsel in the 2008 Criminal Case had provided him with ineffective assistance of counsel by failing to raise federal constitutional claims on direct appeal concerning the eleven substantive issues raised in his state habeas action. See Moussa v. Gerry, No. 217-2012-cv-582 (N.H. Super. Ct., Merrimack Cnty. Jan. 2, 2012), ECF No. 23-5 ("MCSC Habeas Order").  On January 2, 2013, the MCSC denied Moussa's state

11

habeas petition and granted the state's motion to dismiss.  See
MCSC Habeas Order, at 16, ECF No. 23-5, 17.  Moussa appealed the
decision.  See Notice of Appeal, ECF 23-8, 1.  The NHSC declined
the appeal on June 3, 2013, see Moussa v. Warden, No. 2013-0185
(N.H. June 3, 2013), ECF No. 23-9, 1, and denied Moussa's motion
to reconsider on August 15, 2003.  Moussa, No. 2013-0185 (N.H.
Aug. 15, 2013), ECF No. 23-9, 15.

C.   Federal Petition

Moussa filed this § 2254 habeas action in 2012, after he
had served the entire sentence imposed in the 2008 Criminal
Case, but while he remained incarcerated on a sentence imposed
to run consecutively to his 2008 Criminal Case sentence.[4]  On
January 17, 2014, this court identified twelve claims asserted
in the Petition.  See Doc. No. 24 (Jan. 17, 2014, Order)
("January 17 Order").  On November 25, 2014, this court
dismissed Claim 11 as untimely, as it related to the 2005
Criminal Case.  See Doc. No. 48 (Order).  The claims remaining
in the Petition, as numbered in the January 17 Order, are the
following:

---

[4]The sentence Moussa was the serving, and is still serving,
was imposed on criminal charges not relevant to any issue in
this habeas action.

1. The trial court erred in its instruction to the jury concerning the offense of witness tampering, in a manner that had the effect of amending the indictment returned by the grand jury, in violation of Moussa's Fourteenth Amendment due process rights.

2. The trial court erred in restricting Moussa's cross-examination of the state's Arabic translator at Moussa's trial, in violation of the Sixth Amendment right to confrontation.

3. The trial court erred in allowing the state to introduce at trial the state's translation of a phone call, in violation of Moussa's Fourteenth Amendment due process rights.

4. The trial court erred in failing to assure that Moussa knowingly and voluntarily waived his right to be represented by counsel at trial, in violation of Moussa's: (a) Sixth Amendment right to counsel; and (b) Fourteenth Amendment due process rights.

5. The sentencing court failed to credit Moussa with 122 days he served in pretrial confinement, as that time had been improperly credited toward another sentence, in violation of Moussa's Fourteenth Amendment due process rights.

6. The trial court erred by not subpoenaing Moussa's witnesses to testify at his trial, in violation of Moussa's: (a) Sixth Amendment right to compulsory process; and (b) Fourteenth Amendment due process rights.

7. The trial court erred by imposing Moussa's sentences consecutively to previously-imposed sentences, where the previous sentencing orders did not state that Moussa's future sentences were to be served consecutively to the previously-imposed sentences, in violation of Moussa's Fourteenth Amendment due process rights.

8. The trial court erred in refusing to recuse itself, in violation of Moussa's Sixth Amendment right to a fair trial.

9. The trial court erred by denying Moussa rights accruing to him under Miranda v. Arizona, 384 U.S. 436 (1966).

10. The trial court erred in not allowing Moussa to utilize certain impeachment evidence at trial, in violation of

Moussa's Sixth Amendment right to a fair trial and Fourteenth
Amendment right to due process.[5]

. . . .

12. Moussa's appellate counsel failed to raise the federal
nature of certain of Moussa's claims in the direct appeal of
Moussa's conviction, in violation of his Sixth Amendment right
to the effective assistance of appellate counsel.

January 17 Order, 2-3, ECF No. 24, 2-3.

### Discussion

I.   Procedurally Defaulted Claim (Claim 1)

A.   Procedural Default Standard

"A state court's invocation of a [state] procedural rule to

deny a prisoner's claims precludes federal review of the claims

if, among other requisites, the state rule is a nonfederal

ground adequate to support the judgment and the rule is firmly

established and consistently followed." Martinez v. Ryan, 132

S. Ct. 1309, 1316 (2012).  Respondent "bears the burden '. . .

of persuading the court that the factual and legal prerequisites

of a default . . . are present.'" Pike v. Guarino, 492 F.3d 61,

73 (1st Cir. 2007) (citation omitted).

---

[5]The "certain impeachment evidence" language in Claim 10
refers to the trial court's denial of Moussa's request to admit
the Aziz affidavits as full exhibits.

A federal court cannot review a procedurally defaulted claim in a § 2254 petition, unless the petitioner demonstrates either "actual innocence," or "cause" and "prejudice." Costa v. Hall, 673 F.3d 16, 25 (1st Cir. 2012) (citation omitted); see also Lee v. Corsini, 777 F.3d 46, 62 (1st Cir. 2015).  Cause "'ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Costa, 673 F.3d at 26 (citation omitted).  To prove prejudice, a petitioner must demonstrate that the violations of federal law "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. (internal quotation marks and citation omitted) (emphasis in original).

B.   Claim 1 – Erroneous Jury Instruction

In Claim 1, Moussa asserts that the trial court violated his Fourteenth Amendment due process rights by giving the jury an instruction that amended the witness tampering indictment returned by the grand jury.  Pet., 13; ECF No. 23, 13.  No objection was made at trial to the erroneous instruction.

On appeal, Moussa's appellate counsel filed a brief challenging the jury instruction as an improper amendment of the

indictment, citing both state and federal constitutional law. Def.'s Br., 7; ECF No. 31-2, 13.  Counsel further argued that the NHSC should consider the claim, although unpreserved, for plain error.  Def's Br., 11; ECF No. 31-2, 17.

The NHSC applied a "plain error" standard in reviewing Moussa's jury instruction claim.  Moussa II, at 1-2.  Because Moussa had not preserved the issue by a contemporaneous objection, and the NHSC subjected the claim only to plain error review, Claim 1 was procedurally defaulted.  See Obershaw v. Lanman, 453 F.3d 56, 68 (1st Cir. 2006) (citing Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006)).  Although Moussa reasserted this claim in his state habeas petition, the MCSC, in addressing the claim, left the NHSC's decision on procedural default undisturbed.  MCSC Habeas Order, at 2.  Accordingly, Claim 1 may not provide grounds for relief under § 2254 unless Moussa demonstrates that the procedural default of this claim should be excused.

### C.   Cause and Prejudice/Actual Innocence

To the extent Moussa asserts that the procedural default of his federal jury instruction claim should be excused because it was caused by his self-representation and his lack of legal knowledge, the court notes that "pro se status is insufficient

to demonstrate cause and does not excuse procedural default."
Leachman v. Stephens, 581 F. App'x 390, 396 (5th Cir. 2014),
cert. pet. docketed, No. 14-8765 (U.S. Mar. 15, 2015).  Further,
as further explained below in this court's discussion of Claim
4, Moussa's waiver of counsel was knowing, intelligent, and
voluntary.  Similarly, as explained below in this court's
discussion of Claim 12, Moussa was not denied his Sixth
Amendment right to the effective assistance of appellate
counsel.  Accordingly, Moussa cannot rely on lack of trial
counsel or the ineffective assistance of appellate counsel as
"cause" for the procedural default of his federal jury
instruction claim.  Cf. Costa, 673 F.3d at 25 (determinations of
"cause" typically turn on whether prisoner can show that some
factor, "'external to the defense,'" impeded his or her effort
to comply with state procedural rule (citation omitted)).

Furthermore, Moussa has not affirmatively asserted that he
is actually, factually innocent of the offenses of which he was
convicted.  Nor has he presented sufficient facts to support an
"actual innocence" claim.  See generally Pet., ECF No. 23.  For
these reasons, summary judgment is granted on Claim 1.

II.   Federal Claims Decided on Their Merits (Claims 2-8, 10, 12)

A.   Standard of Review

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  When a prisoner brings a claim in federal court that was adjudicated on the merits in State court proceedings,

> [f]ederal habeas relief may not be granted for claims
> subject to § 2254(d) unless it is shown that the
> earlier state court's decision was contrary to
> federal law then clearly established in the holdings
> of th[e Supreme] Court, or that it involved an
> unreasonable application of such law, or that it was
> based on an unreasonable determination of the facts
> in light of the record before the state court.

Harrington v. Richter, 562 U.S. 86, 100 (2011) (internal quotation marks and citations omitted).

> A state court's ruling is contrary to federal law
> either when it adopts a rule that contradicts the
> governing law set forth in the Supreme Court's cases
> or when it reaches a different result from a Supreme
> Court decision under a set of facts that are
> materially indistinguishable. . . . To be unreasonable
> . . . the application of federal law must be more than
> incorrect or erroneous.  In other words, some
> increment of incorrectness beyond error is required.
> Finally, we only overturn state court factual
> determinations that are unreasonable in light of the
> record.

Rosenthal v. O'Brien, 713 F.3d 676, 683 (1st Cir.), cert. denied, 134 S. Ct. 434 (2013) (internal quotation marks and citations omitted).  The petitioner bears the burden both of showing that the state court decision is contrary to, or involves an unreasonable application of, established federal law, and of rebutting the presumption of correctness of state court factual findings by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

"Section 2254(d) applies even where there has been a summary denial" of the federal claim in the state courts. Cullen, 131 S. Ct. at 1402; see Harrington, 562 U.S. at 100 (one-sentence summary denial constituted adjudication on the merits and § 2254(d) applied).  "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits."  Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013).  The presumption that a federal claim was adjudicated on the merits is rebuttable under limited circumstances not present here.  See id.

In cases in which the state courts have summarily denied petitioner's federal claims, the petitioner can satisfy the "unreasonable application" prong of § 2254(d)(1) only "by

showing that 'there was no reasonable basis' for the [state court]'s decision." <u>Cullen</u>, 131 S. Ct. at 1402 (quoting <u>Harrington</u>, 562 U.S. at 98).  The writ may issue "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." <u>Harrington</u>, 562 U.S. at 102.

### B.   Claim 2 – Ezzat Cross-Examination

Moussa claims that his Sixth Amendment confrontation right was violated when the trial court denied him the ability to fully cross-examine Ezzat concerning the contents of the telephone call, which was a vital part of the state's case. Pet., 17-21, ECF No. 23, 17-21.  Specifically, Moussa claims that he was unable to cross-examine Ezzat with the transcript she prepared, as he had not been provided with it prior to trial, and the court denied him the ability to cross-examine Ezzat with a different translation that Ezzat had not seen, but which Moussa had used in preparing for trial.  <u>Id.</u>  Moussa presented this claim to the MCSC in his state habeas action, and the MCSC summarily denied relief on the federal claim.  <u>MSCS Habeas Order</u>, at 4 (citing <u>Moussa II</u>, at 2).

A defendant who is "prohibited from engaging in otherwise appropriate cross-examination" may state a claim under the Sixth Amendment.  Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986).

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.  On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.

Id. at 679.  The First Circuit has stated:

> The first question to be asked under the Van Arsdall test is whether the limitation prejudiced the examination of that particular witness.  In other words, absent the limitation, would the jury have received a "significantly different impression" of the witness's credibility?  The second element of the Van Arsdall test is whether the error was harmless beyond a reasonable doubt; if so, reversal is not warranted.

DiBenedetto v. Hall, 272 F.3d 1, 10 (1st Cir. 2001) (internal citations omitted).

Moussa has failed to demonstrate, either in the Petition or in any state court filings, any particular discrepancy between the two translations that demonstrate that the trial court's decision to limit his cross-examination actually prejudiced Moussa.  Moussa has thus failed to meet his burden to demonstrate that the MCSC's decision was "contrary to, or involved an unreasonable application of" federal law, or that the factual findings upon which it relied were unreasonable in

light of the record before that court.  28 U.S.C. § 2254(d)(1).
Accordingly, Moussa is not entitled to habeas relief on Claim 2,
and summary judgment is granted as to that claim.

### C.    Claim 3 – Admission of Ezzat Transcript

Moussa claims that his Fourteenth Amendment due process
right was violated when the trial court admitted Ezzat's
translation transcript in evidence despite the state having
failed to provide it to Moussa in advance of trial.  Pet., 22-
28, ECF No. 23, 22-28.  Moussa presented this claim to the MCSC
in his state habeas action, and the MCSC summarily denied relief
on the federal claim.  MSCS Habeas Order, at 5 (citing Moussa
II, at 3).

The prosecution in a criminal case is required to provide,
upon request, material, exculpatory evidence to a criminal
defendant.  See Brady v. Maryland, 373 U.S. 83, 87 (1963).  That
requirement includes the provision of information that could
potentially be useful to the defendant in impeaching government
witnesses.  Giglio v. United States, 405 U.S. 150, 153–54
(1972); United States v. Ramos-González, 775 F.3d 483, 494
(2015).  To prevail on his claim regarding the state's delayed
disclosure of the Ezzat transcript, Moussa must show that the
delayed disclosure prevented him "from using the disclosed

22

material effectively in preparing and presenting [his] case."
United States v. Misla-Aldarondo, 478 F.3d 52, 63 (1st Cir.
2007) (internal quotation marks and citation omitted).  To make
that showing, Moussa "must at a minimum make a prima facie
showing of a plausible strategic option which the delay
foreclosed."  Id. (internal quotation marks and citations
omitted).

Moussa has failed to demonstrate, either in the Petition or
in any state court filings, any specific "plausible strategic
option" which he was unable to employ due to the delayed
disclosure of the Ezzat affidavit.  Absent such a showing,
Moussa cannot assert a violation of his federal due process
rights created by the trial court's admission of the late-
disclosed transcript in evidence.  See United States v. Rivera
Calderon, 578 F.3d 78, 93 (1st Cir. 2009) (failure to identify
the manner in which late disclosure of evidence prevented
defense counsel from providing effective representation was
fatal to claim based on that delay).  Moussa has thus failed to
meet his burden to demonstrate that the MCSC's decision was
"contrary to, or involved an unreasonable application of"
federal law, or that the factual findings upon which it relied
were unreasonable in light of the record before that court.  28

U.S.C. § 2254(d)(1).  Accordingly, Moussa is not entitled to habeas relief on Claim 3, and summary judgment is granted as to that claim.

    D.   Claim 4 – Waiver of Right to Counsel

    Moussa claims that the trial court violated his Sixth Amendment right to counsel by failing to revisit, sua sponte, whether Moussa still wished to represent himself, when the trial court became aware that Moussa had been ill, and that his family had possibly hired counsel to represent Moussa.  Pet., 29-33, ECF No. 23, at 29-33.  Moussa presented this claim to the MCSC in his state habeas action, and the MCSC summarily denied relief on the federal claim.  MSCS Habeas Order, at 7 (citing Moussa II, at 3).

    Moussa did not, at the September 26, 2008, hearing or at any other time prior to or during his trial: advise the court that he wanted Wight to represent him, ask for court-appointed counsel, ask for standby counsel, attempt to revoke his waiver of counsel, or indicate in any way that he no longer wished to represent himself.  Sept. 26, 2008, Status Conf. Tr. 7; see also Oct. 6, 2008 Status Conf. Tr.

    In Moussa's direct appeal, the NHSC found that under state law:

> "[W]hen a defendant clearly and unequivocally waives his
> right to counsel by exercising his right to represent
> himself in a timely manner, and his waiver is knowingly and
> intelligently made, the exercise of [the right to] self-
> representation must be scrupulously respected through all
> critical stages of his criminal prosecution and cannot be
> revoked without affirmative action by the defendant to
> rescind his waiver and reinstate his right to counsel."

Moussa II, at 3 (quoting State v. Ayer, 150 N.H. 14, 26 (2003)).

A defendant may waive his right to counsel and represent himself as long as he "knowingly and intelligently forgo[es the] relinquished benefits" of the right to counsel.  Faretta v. California, 422 U.S. 806, 835 (1975) (internal quotation marks and citation omitted).  Moussa points to no federal case that requires a trial court to, sua sponte, revisit the question of whether a criminal defendant's assertion of his right to represent himself was knowing, intelligent, and voluntary, absent any express or affirmative act by the defendant to revoke his waiver of counsel, or to assert his right to counsel in his criminal proceedings.[6]

---

[6]The court finds instructive that, in the analogous situation where a criminal defendant has previously waived his right to court-appointed counsel, and not reasserted that right, the Sixth Circuit has found that trial counsel has no duty to inquire, sua sponte, whether defendant is eligible for court-appointed counsel after the defendant asserts "that he is waiving his right to counsel for financial reasons."  United States v. Peck, 62 F. App'x 561, 567 (6th Cir. 2003).

Moussa has thus failed to meet his burden to demonstrate that the MCSC's decision was contrary to, or involved an unreasonable application of federal law as determined by the Supreme Court, or that the factual findings upon which the state court relied were unreasonable in light of the state court record.  See 28 U.S.C. § 2254(d).  Accordingly, Moussa is not entitled to habeas relief on Claim 4, and summary judgment is granted as to that claim.

###    E.    Claims 5 and 7 - Sentencing Issues

Moussa claims that the trial court, in sentencing him, violated his Fourteenth Amendment right to due process when it denied him 122 days of pretrial credit, and imposed his sentences in the 2008 Criminal Case consecutively to previously-imposed sentences.  Pet., 34-36, 41-44; ECF No. 23, 34-36, 41-44.  Moussa presented these claim to the MCSC in his state habeas action.  The MCSC found that the NHSC had previously decided these issues based on state sentencing law, and denied relief on the federal claim.  MSCS Habeas Order, at 8, 10 (citing Moussa II, at 1-2).

This court is bound by the state court's interpretation of a state statute.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one

announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); Ware v. Dickhaut, 439 F. App'x 14, 15 (1st Cir. 2011).  Errors in sentencing under state law generally are not cognizable on federal habeas corpus review.  See 28 U.S.C. § 2254(a); Pulley v. Harris, 465 U.S. 37, 41 (1984).  Only when the challenged state sentence is arbitrary and capricious does the misapplication of state law violate due process.  See Richmond v. Lewis, 506 U.S. 40, 50 (1992).

The MCSC decision concerning Moussa's sentencing claims rested on an interpretation of state law.  Moussa has failed to show that the state court sentence, or the MCSC affirmance thereof, was arbitrary and capricious, or otherwise violative of federal law.  Moussa has thus failed to meet his burden to show that the MCSC applied law that was contrary to, or involved the unreasonable application of federal law, or that the court unreasonably determined the facts, and he is not entitled to federal habeas relief on Claims 5 and 7.  See 28 U.S.C. § 2254(d).  Summary judgment is granted, and the Petition is denied, as to those claims.

F.   Claim 6 – Failure to Subpoena Witnesses

Moussa claims that the trial court violated his Sixth Amendment right to compulsory process, and his Fourteenth

Amendment right to due process by failing to subpoena witnesses that Moussa had identified on a witness list.  Pet., 37-40, ECF No. 23, 37-40.  Moussa presented this claim to the MCSC in his state habeas action, and the MCSC summarily denied relief on the federal claim.  MSCS Habeas Order, at 9-10 (citing Moussa II, at 4).

"[A] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure and . . .  the Constitution [does not] require judges to take over chores for a pro se defendant that would normally be attended to by trained counsel as a matter of course."  Pliler v. Ford, 542 U.S. 225, 231 (2004) (internal quotation marks and citations omitted).  Moussa has not identified any federal law that would support his claim that he had a right to have the court subpoena his witnesses, absent an express request for the court's assistance.  Moussa has thus failed to meet his burden to demonstrate that the MCSC's decision denying him relief under the federal Constitution was contrary to, or involved an unreasonable application of federal law, or that the factual findings upon which it relied were unreasonable in light of the record before that court.  See 28 U.S.C. § 2254(d).

Accordingly, Moussa is not entitled to habeas relief on Claim 6, and summary judgment is granted as to that claim.

G.   Claim 8 – Failure to Recuse

Moussa claims that the trial judge, in failing to recuse herself in the 2008 Criminal Case, violated his Sixth Amendment right to a fair trial.  Pet., 45-51; ECF No. 23, 45-51.  Moussa complains here, as he did in the state habeas court, that the trial judge in his 2008 Criminal Case should have recused herself because: (1) she had made rulings with which Moussa disagreed; (2) the sentence she originally imposed in the 2005 Criminal Case had been reversed by the NHSC; (3) at sentencing in the 2005 Criminal Case, the trial judge, who also presided over the 2008 Criminal Case, expressed sentiments concerning Moussa's behavior and attitude that Moussa interpreted as personal distaste for Moussa; and (4) Moussa had verbally abused the trial judge.  Id.  The MCSC found that Moussa's assertions failed to provide a sufficient basis to demonstrate that the trial judge was biased against Moussa.  MCSC Habeas Order, at 12.  Further, the state court, without comment, denied relief on Moussa's asserted federal claim.  Id.

"[A] fair trial in a fair tribunal is a basic requirement of due process."  Caperton v. A.T. Massey Coal Co., 556 U.S.

868, 876 (2009) (internal quotation marks and citation omitted). In order to demonstrate judicial bias warranting recusal, Moussa must overcome a presumption of "'honesty and integrity in those serving as adjudicators.'"  Coley v. Bagley, 706 F.3d 741, 751 (6th Cir. 2013) (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)).  "The presumption of impartiality stems not merely from the judicial-bias caselaw, but from the more generally applicable presumption that judges know the law and apply it in making their decisions, and the even more generally applicable presumption of regularity."  Coley, 706 F.3d at 751 (internal quotation marks and citations omitted).

Moussa has not identified any federal law that supports his claims that the trial court's incorrect rulings, rulings with which Moussa did not agree, statements at sentencing in another case, and Moussa's own verbal abuse of the judge, required the judge to recuse herself in order to protect Moussa's due process right to a fair trial.  Moussa has thus failed to meet his burden to demonstrate that the MCSC's decision denying him relief under the federal Constitution was contrary to, or involved an unreasonable application of federal law, or that the factual findings upon which the MCSC relied were unreasonable in light of the record before that court.  See 28 U.S.C. § 2254(d).

Accordingly, Moussa is not entitled to habeas relief on Claim 8, and summary judgment is granted as to that claim.

### H.    Claim 10 – Failure to Admit Aziz Affidavits

Moussa claims that the trial court violated his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process when it did not allow Moussa to admit the Aziz affidavits in evidence, as they had not been provided to the state in reciprocal discovery, while allowing the state to admit the Ezzat transcript when that document had not been provided to Moussa in discovery.  Pet., 52-53, ECF No. 23, 52-53.  Moussa presented this claim to the MCSC in his state habeas action, and the MCSC summarily denied relief on the federal claim.  MSCS Habeas Order, at 14.

"An erroneous evidentiary ruling that results in a fundamentally unfair trial may constitute a due process violation and thus provide a basis for habeas relief."  Lyons v. Brady, 666 F.3d 51, 55 (1st Cir. 2012).  "However, to give rise to habeas relief, 'the state court's application of state law must be so arbitrary or capricious as to constitute an independent due process . . . violation.'"  Id. (quoting Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011)).

Moussa has not identified any federal law that would support his claim that the trial court, in refusing to admit the Aziz affidavits as they had not been provided to the state in reciprocal discovery, or the MCSC's approval thereof under state law, amounted to a violation of Moussa's federal due process rights. Moussa has thus failed to meet his burden to demonstrate that the MCSC's decision denying him relief was contrary to, or involved an unreasonable application, of federal law, or that the factual findings upon which it relied were unreasonable in light of the record before that court. See 28 U.S.C. § 2254(d). Accordingly, Moussa is not entitled to habeas relief on Claim 10, and summary judgment is granted as to that claim.

I.   Claim 12 – Ineffective Assistance of Appellate Counsel

Moussa claims that, on direct appeal, his appellate counsel failed to raise the federal nature of the claims asserted in this petition as Claims 1-8, 10, and 11, in violation of his Sixth Amendment right to the effective assistance of counsel. Pet., 7-10, ECF No. 23, 7-10. Moussa presented this claim to the MCSC in his state habeas action, and the MCSC denied relief on the federal claim. MSCS Habeas Order, at 3-5, 7, 8, 10, 12-14, and 16.

The relevant federal standard for evaluating an ineffective assistance of appellate counsel claim like Moussa's requires the petitioner to show that: (1) appellate counsel's performance in failing to brief certain issues fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, petitioner would have prevailed on those issues.  See Strickland v. Washington, 466 U.S. 668, 686-88 (1984); Ramirez-Burgos v. United States, 313 F.3d 23, 28 (1st Cir. 2002).

Because Moussa failed to make contemporaneous objections at trial raising federal issues, he failed to preserve for appeal any federal claims relating to the issues that he now claims should have been argued by appellate counsel.[7]  See, e.g., State

---

[7]Moussa's failure to contemporaneously object to the various issues raised in connection with Claim 12 may be found in the record as follows: Trial Tr. 222 (Claim 12(a) concerning jury instruction); id. at 64-70 (Claim 12(b) concerning Ezzat cross-examination); id. at 63 (Claim 12(c) concerning admission of Ezzat transcript); Sept. 26, 2008, Status Conf. Tr. 3-6 (Claim 12(d) concerning court's failure to sua sponte revisit waiver of counsel); 2008 Criminal Case (Def.'s Mot. Pretrial Confinement Credit for Time Served filed Nov. 20, 2008, ECF No. 31-3, 33-35, and Def's Response to Obj., Dec. 9, 2008, ECF No. 31-3, 39-40) (Claim 12(e) concerning pretrial credit and 12(g) concerning consecutive sentences); Trial Tr. 195-97 (Claim 12(f) concerning witness subpoenas); Oct. 6, 2008, Status Conf. Tr. 13-19, Trial Tr. 3-5 (Claim 12(h) concerning recusal); Trial Tr. 103-05 (Claim 12(i) concerning inability to admit Aziz affidavits in evidence); and Oct. 6, 2008, Status Conf. Tr. 24.

v. Towle, No. 2013-217, 2015 N.H. LEXIS 8, at *10, 2015 WL
365694, at *7 (N.H. Jan. 29, 2015) (New Hampshire Supreme Court
generally requires "contemporaneous and specific objection" to
preserve issue for appellate review).  "Where an issue is not
preserved for appellate review, appellate counsel's failure to
raise the issue is not constitutionally deficient as it is based
on the reasonable conclusion that the appellate court will not
hear the issue on its merits." Sairras v. Fla. Dep't of Corr.,
496 F. App'x 28, 34 (11th Cir. 2012).  Accordingly, the MCSC
decision rejecting Moussa's ineffective assistance of appellate
counsel claim is neither contrary to, nor an unreasonable
application of, the Strickland standard.  Summary judgment is
thus granted on Claim 12, and the Petition is denied as to that
claim.

III. Claim 9 – Miranda Claim

In Claim 9, Moussa asserts that his rights under Miranda v.
Arizona, 384 U.S. 436 (1966), were violated by the trial court.
Pet., 58, ECF No. 23, 58.  The state courts never ruled on this
claim.  Accordingly, this court reviews it de novo.  See Dugas
v. Coplan, 506 F.3d 1, 7 (1st Cir. 2007).

The only discussion of the claim in the record before this
court, aside from Moussa's unsupported assertion of a Miranda

34

violation, is in Moussa's response to the respondent's
supplemental motion for summary judgment on the claim.  See
Pet'r's Mot. Resp. to Resp't's Supp'l Mot. Summ. J., ECF No. 45.
In that response, Moussa states that the admission of certain
jail records at trial violated his rights under Miranda.  See
Pet., 58, ECF No. 23, 58.  This court has reviewed the use of
those records at trial, see Trial Tr. 22, 43-44, and can find no
grounds upon which this court may grant relief based on Miranda
or the Fifth Amendment Self-Incrimination Clause, as none of
those records relate in any way to any statement made during a
custodial interrogation of Moussa.  Accordingly, summary
judgment is granted on Claim 9.

## Certificate of Appealability

The Rules Governing Section 2254 Proceedings ("§ 2254
Rules") require the court to "issue or deny a certificate of
appealability when it enters a final order adverse to the
party."  § 2254 Rule 11(a).  The court will issue the
certificate "only if the applicant has made a substantial
showing of the denial of a constitutional right."  28 U.S.C.
§ 2253(c)(2).  Moussa has failed to make such a showing.
Accordingly, the court declines to issue a certificate of
appealability in this case.

**Conclusion**

For the foregoing reasons, the court orders as follows:

1.   Respondent's motion for summary judgment on Claims 1-6, 8, and 12 (doc. no. 31), motion for summary judgment on Claim 10 (doc. no. 35), and supplemental motion for summary judgment on Claims 7 and 9 (doc. no. 44) are granted.

2.   The amended petition for a writ of habeas corpus (doc. no. 23) is denied.

3.   The court declines to issue a certificate of appealability.

4.   The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

March 30, 2015

cc:  Saad Moussa, pro se
     Elizabeth C. Woodcock, Esq.